UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 13-025 (RJL) |
| | ) |
| MONIQUE MURDOCK, | ) |
| | ) |
| Defendant. | ) |

**FILED**
**JUL 27 2017**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

<u>MEMORANDUM OPINION</u>
(July 26, 2017) [Dkt. # 34]

Currently pending before the Court is defendant Monique Murdock's Motion for Early Termination of Supervised Release [Dkt. # 34]. Upon consideration of the Motion, the parties' briefs, the relevant law, and the entire record herein, I find that early termination of Ms. Murdock's supervision would not be in the interests of justice, and as a result, her motion is DENIED.

## BACKGROUND

In January 2013, the United States Attorney's Office for the District of Columbia filed a one-count Information charging Ms. Murdock with one count of theft from a program receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A). *See* Information [Dkt. # 1]. On November 13, 2013, Ms. Murdock pleaded guilty to the count, pursuant to a plea agreement which stated that her conduct was "fairly and accurately describe[d]" in the "Statement of Offense" attached to the agreement. 11/13/2013 Minute Entry; Plea Agreement, ¶ 1 [Dkt. # 12]. The Statement of Offense describes Ms. Murdock's criminal conduct. Statement of Offense [Dkt. # 11]. From June 2006 through October 2008, Ms. Murdock was the Executive Director of Nia Community Public

Charter School in Washington, D.C., a public charter school that receives federal funds from the Department of Education. *Id.* ¶¶ 1–2, 8. As Nia's Executive Director, Ms. Murdock was responsible for the school's fiscal management, and was a signatory to all of the school's bank accounts. *Id.* ¶ 1. Between March and August 2008, Ms. Murdock signed five checks transferring a total of $29,000 from Nia to a Uniform Transfer to Minors Act (UTMA) account for her minor foster child, an account for which Ms. Murdock was the custodian. *Id.* ¶¶ 9–10. Ms. Murdock subsequently converted the $29,000 to her personal benefit. *Id.* ¶ 12.

Beginning in April 2010, Ms. Murdock served as a Child Youth and School Services (CYS) Facility Director at Cody Development Center in Fort Meyer, Virginia. *Id.* ¶ 13. In that role, Ms. Murdock possessed a Government Purchase Card (GPC) and was responsible for purchasing food and supplies for the Development Center. *Id.* Between February and December 2012, Ms. Murdock purchased $11,773 worth of unauthorized gift cards with the GPC. *Id.* ¶ 14.

For her conduct, Ms. Murdock faced a maximum sentence of ten years imprisonment, a period of supervised release of up to three years, a fine of $100,000, a $100 special assessment, and a forfeiture money judgment of $29,000. Plea Agreement, ¶ 2. At sentencing, the Government recommended that the Court impose a sentence in the mid-range of 6 to 12 months, a three-year term of supervised release, a $40,773 order of restitution, and a $29,000 forfeiture money judgment. Gov't's Sentencing Memo. at 6 [Dkt. # 18]. For her part, defendant asked the Court to impose a

sentence of supervised probation without imprisonment. Def.'s Sentencing Mem. at 10 [Dkt. # 21].

On April 14, 2014, the Court sentenced Ms. Murdock to nine months imprisonment, thirty-six months of supervised release, restitution in the amount of $40,773, and a $100 special assessment.[1] 04/24/2014 Minute Entry; Judgment [Dkt. # 25]. Ms. Murdock served the imprisonment portion of her sentence and began her supervised release term on April 17, 2015. Def.'s Mot. at 2. In January 2017, twenty months after her release from prison, Ms. Murdock moved to terminate her supervision early. *Id.* In support of her motion, Ms. Murdock states that she has "fully complied with all aspects of her supervision, including community service and restitution obligations." *Id.* She asks the Court to terminate her supervision so that she can more easily visit elderly relatives in North Carolina and New York for whom she serves as a legal guardian, and so that she can establish a non-profit organization for veterans and prisoners re-entering in the workforce. *Id.* at 4. The government stated that it did not oppose the motion, provided that Ms. Murdock brought her monthly restitution payments into compliance, submitted a new financial statement to the government, and entered into a new payment plan; Ms. Murdock represents that she has completed all of those steps. *See* Gov't's Resp. to Court's 03/13/2017 Order at 2 [Dkt. # 37]; Consent Suppl. to Mot. at 1–2 [Dkt. # 39].

---

[1] I previously entered a consent order of forfeiture in the amount of $29,000. Consent Order of Forfeiture [Dkt. # 13].

## DISCUSSION

Changes to a defendant's supervised release term after he or she has been sentenced are governed by 18 U.S.C. § 3583(e). Under that section, the Court may terminate a supervised release term "at any time after the expiration of one year of supervised release" if the Court is satisfied that (1) early termination is "warranted by the conduct of the defendant released" and (2) early termination is in "the interest of justice." *See* 18 U.S.C. § 3583(e)(1). As part of that consideration, the Court must consider:

- the "nature and circumstances of the offense and the history and characteristics of the defendant";
- the "need for the sentence imposed . . . to afford adequate deterrence to criminal conduct[,] to protect the public from further crimes of the defendant[,] and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment";
- the "kinds of sentence and the sentencing [Guidelines] range" for the offense;
- any pertinent policy statement from the United States Sentencing Commission;
- "the need to avoid unwarranted sentence disparities"; and
- "the need to provide restitution to any victims of the offense."

*See* 18 U.S.C. § 3583(e) (instructing the Court to consider "the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D). (a)(4), (a)(5), (a)(6), and (a)(7)" when deciding whether to terminate supervised release).

Although the Court considered all of these factors (and others) when structuring her original sentence, our Circuit has noted that "[o]ccasionally, changed circumstances . . . will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *United States v. Mathis-Gardner*, 783 F.3d 1286 (D.C. Cir. 2015) (quoting *United States v. Lussier*, 104 F.3d 32, 32 (2d Cir. 1996)).

In support of her motion, Mr. Murdock argues that she has complied with the terms of her supervision and has successfully completed the 300 hours of community service that the Court ordered. Def.'s Mot. at 4. Furthermore, Ms. Murdock argues that changed circumstances warrant an early termination of supervision. Specifically, she argues that early termination would allow her to more conveniently care for two elderly aunts who reside in New York and North Carolina, and for whom she serves as a legal guardian, and argues that termination would allow her to establish a non-profit organization for military veterans and prisoners reentering the workforce. *Id.*

I am pleased that Ms. Murdock has complied with the terms of her supervision to date, and I appreciate her willingness to care for her elderly relatives and to create a non-profit organization that serves veterans and former prisoners. Nevertheless, upon careful consideration of her motion and the statutory factors, I find that early termination is

5

neither warranted by her conduct, nor would it be in the interests of justice, and thus will deny her motion.

As an initial matter, mere compliance with the terms of a defendant's supervision is insufficient to merit early termination of supervised release, because a defendant is *expected* to exhibit good prison conduct and comply with her supervision terms. *See United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005) ("Model prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release."); *see also United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (finding that while the defendant's "post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule"). Instead, "a defendant must show something 'of an unusual or extraordinary nature' in addition to full compliance," which Ms. Murdock has not done here. *United States v. Etheridge*, 999 F. Supp. 2d 192, 196 (D.D.C. 2013).

Nor would the interests of justice be served by early termination of supervision. When I sentenced Ms. Murdock in 2014, I imposed a sentence that was carefully calibrated to reflect the seriousness of her offense, to provide adequate punishment for her conduct, to deter others who may be similarly inclined to defraud schools and education centers that receive significant taxpayer funds from the federal government and to otherwise meet the factors set forth in 18 U.S.C. § 3553.

Ms. Murdock's thirty-six month supervised release term was a key component of her sentence and serves the two-fold objectives of punishment and deterrence.

6

Supervised release is not simply a means to assist her rehabilitation and reintegration into the community; it is a deprivation of her liberty and thus serves as a form of punishment. *See United States v. Ginyard*, 215 F.3d 83, 87 (D.C. Cir. 2000); *United States v. Gilchrist,* 130 F.3d 1131, 1134 (3d Cir. 2001); *see also Johnson v. United States*, 154 F.3d 569, 571 (6th Cir. 1998) (finding that although "rehabilitation is a primary purpose of supervised release," it "is also punitive in nature"), *rev'd on other grounds*, 529 U.S. 53 (2000). Since it is a punishment, supervised release serves to further the goal of general deterrence. Indeed, as the Supreme Court has itself stated, "[o]ur jurisprudence has always accepted deterrence in general . . . as [a] proper goal[] of punishment." *Furman v. Georgia*, 408 U.S. 238, 343 (1972).

Because Ms. Murdock is under the Court's supervision, she must clear her travel outside the District with her probation officer, and she is also prohibited from engaging in employment that gives her access to monetary accounts. Judgment at 3–4 [Dkt. # 25]. I recognize that these conditions may be inconvenient for Ms. Murdock, given her family responsibilities and her desire to start a non-profit organization. However, it is not the purpose of supervised release to maximize a defendant's convenience, and I certainly do not believe that the changed circumstances Ms. Murdock invokes render the terms of her supervised release "too harsh or inappropriately tailored" to meet the purposes of criminal sentencing set forth in 18 U.S.C. § 3553, such that early termination would be warranted. *Mathis-Gardner*, 783 F.3d at 1289.

## CONCLUSION

When I sentenced Ms. Murdock, the combination of jail time and supervised release I imposed was a fair punishment for the crime that she committed and was calculated to achieve maximum general deterrence. It remains so today. Accordingly, Defendant's Motion for Early Termination of Supervised Release [Dkt. # 34] is **DENIED**. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge